][IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION |
| | § | |
| BOARD OF REGENTS OF THE | § | NO. 1:19-cv-00415-LY |
| UNIVERSITY OF TEXAS SYSTEM; | § | |
| MELISSA B. HARRELL, Individually | § | |
| and in her official capacity; LAURA E. | § | |
| MITCHELL, Individually and in her | § | |
| official capacity; and RENA S. DAY, | § | |
| Individually and in her official capacity, | § | JURY TRIAL DEMANDED |
| Jointly and Severally, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S SECOND AMENDED VERIFIED COMPLAINT**

NOW COMES, Plaintiff John Doe, by and through his attorney of record, David K.

Sergi, and in filing this Second Amended Verified Complaint, complains of Defendant Board of

Regents of the University of Texas System, and Defendants Melissa B. Harrell, Laura E.

Mitchell, and Rena S. Day, in their individual and official capacities, and would show as follows:

**I.**

**JURISDICTION AND PARTIES**

1.      This is an action under 42 U.S.C. §1983 for deprivation of Plaintiff's rights under the

First and Fourteenth Amendments to the United States Constitution, for deprivation of Plaintiff's

rights to freedom of speech, due process, under the federal and Texas Constitutions, and breach

of contract under Texas law.

2.      Plaintiff John Doe is a resident of St. Johns County, Florida.

**[ 1 ]**

3.      Defendant Board of Regents of the University of Texas System (hereinafter "UTS") is an institution of higher education organized and existing under the laws of Texas, and may be served with process by serving President Gregory L. Fenves, at the Office of the President, 110 Inner Campus Drive, Stop G3400, Austin, TX 78712.

4.      Defendant Melissa B. Harrell (hereinafter "Defendant Harrell") is an associate professor and Academic Advisor at the University of Texas Health Science Center at Houston's School of Public Health – Austin Regional Campus, and a resident of Texas, and may be served with process at University of Texas Health Science Center at Houston's School of Public Health, Austin Regional Campus, 1616 Guadalupe, Ste 6.336, Austin, TX 78701.

5.      Defendant Laura E. Mitchell (hereinafter "Defendant Mitchell") is a professor and former Epidemiology Preliminary Exam Committee Chair and former Associate Dean of Research at the University of Texas Health Science Center at Houston's School of Public Health, and a resident of Texas, and may be served with process at University of Texas Health Science Center at Houston's School of Public Health, 1200 Herman Pressler Dr., RAS E547, Houston, TX 77030.

6.      Defendant Rena S. Day (hereinafter "Defendant Day") is a professor and current Epidemiology Preliminary Exam Committee Chair at the University of Texas Health Science Center at Houston's School of Public Health, and a resident of Texas, and may be served with process at University of Texas Health Science Center at Houston, 1200 Herman Pressler Dr., RAS E1027, Houston, TX 77030.

7.      Venue is proper in the Western District of Texas, Austin Division, pursuant to 28 U.S.C. § 1391(b), because all of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

[ 2 ]

8.      This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 as Plaintiff's claims are, in part, based upon various provisions in federal law.

## II.

## BACKGROUND FACTS

9.      Plaintiff was a student in the PhD program in the department of Epidemiology, at The University of Texas Health Science Center ("UT Health") from August 2013 until his final dismissal in June of 2017.

10.     Plaintiff came to The University of Texas's Health Science Center with an excellent record of academic achievement throughout his educational career.

11.     Plaintiff received his undergraduate degree from Brandeis University and later received a Masters of Public Health in Epidemiology from George Washington University.

12.     Since Plaintiff's studies at Brandeis, he has regularly and consistently espoused views that are critical of vaccine safety and efficacy, and he has brought attention to scientific studies and government documents that link vaccines to autism.

13.     Plaintiff has continually faced attacks on social media as well as intense and openly hostile scrutiny regarding his views and his writings. This includes vaccine proponents inciting letter-writing campaigns to University of Texas Health Science Center as well as Plaintiff's prior academic institutions to complain about him, and his admission thereto.

14.     Plaintiff was admitted to UT Health's PhD program in the School of Public Health to secure his PhD in Epidemiology. Plaintiff applied to and was accepted at the San Antonio Campus, and transferred to the Austin campus the following year. Plaintiff disclosed his research

[ 3 ]

interest and views on vaccine safety as well as his personal experiences related to his diagnosis of Asperger Syndrome, an autism spectrum disorder, in his application to UTHealth.[1]

15.    Plaintiff began his doctoral program at UTHealth in the Fall Semester of 2013, and in his first semester received an "A" in the highest level course offered in the program, Epidemiology IV.[2] The course was taught to him by Defendant Harrell.

16.    Plaintiff spent two years completing the coursework that qualified him to take the preliminary examination which he was required to pass in order to write his dissertation.

17.    As Associate Dean of Research, at UTHealth, Defendant Mitchell oversaw millions of dollars in incoming grants, including her own, from two federal agencies that Plaintiff had frequently criticized for their practices and policies regarding vaccinations.

18.    Defendant Mitchell became Chair of the Preliminary Exam Committee in fall of 2014, the same school year that Plaintiff would take his first preliminary exam.

19.    Plaintiff took the preliminary exam for the first time on June 11, 2015.

20.    In August of 2015, Plaintiff was advised that he had failed the preliminary exam.[3] Defendant Mitchell presented Plaintiff with a very harshly written "Exam Summary," claiming he had "broad deficits" in all areas of epidemiology, despite his prior academic success at the school.[4] Her tone and intent were clearly to discourage Plaintiff from pursuing a PhD, not to assist him in preparing for a second and final taking of the exam.

21.    Defendant Harrell assured Plaintiff that he was not alone, that another of the four Austin students who took the exam had also failed it. Plaintiff felt this disclosure by Defendant Harrell

---

[1] *See* Plaintiff's Exhibit 1, Personal Statement Submitted for Plaintiff's Application to UT Health.
[2] *See* Plaintiff's Exhibit 2, Transcript from UTHealth.
[3] *See* Plaintiff's Exhibit 3, Letter from L. Kay Bartholomew, EDD, MPH.
[4] *See* Plaintiff's Exhibit 4, Exam Summary from Defendant Mitchell.

to be odd, and possibly in violation of student privacy/confidentiality policy. Given the small number of test-takers, her statement all but identified the other student who allegedly failed the exam. That student received no feedback of any kind, underscoring Defendant Mitchell's inordinate focus on Plaintiff.

22.     In light of Plaintiff failing the exam, a remediation plan was suggested by Defendant Mitchell.[5]

23.     As part of the remediation plan, Defendant Mitchell suggested that Plaintiff take not a PhD-level course, but a Masters-level course: Epidemiology III, for which Plaintiff had received a course waiver as he already held a master's degree in Public Health.[6] Defendant Harrell, Plaintiff's academic advisor, then informed him that he must enroll in the course in order to stay in the program.[7]

24.     Despite Plaintiff's repeated requests for clarification, Defendant Mitchell did not provide Plaintiff with any further information regarding his alleged mistakes on the preliminary examination.[8] Defendant Mitchell also denied Defendant Harrell access to this information and refused to allow her to review his exam despite department policy which stated: "1st Fail – Chair contacts Advisor – reviews exam."[9]

25.     Upon inquiry, Plaintiff was incorrectly told by Defendant Mitchell via email that there was no process by which the exam results could be appealed.[10]

26.     Plaintiff was later informed by administrators that an appeal process did exist by

---

[5] *See* Plaintiff's Exhibit 5, UTHealth Remediation Plan. *See also* Plaintiff's Exhibit 4.
[6] *See* Plaintiff's Exhibit 4.
[7] *See* Plaintiff's Exhibit 6, Email Correspondence with Defendant Harrell.
[8] *See* Plaintiff's Exhibit 7, Email Correspondence with Defendants Mitchell and Harrell.
[9] *See* Plaintiff's Exhibit 8, Epidemiology Preliminary Exam Packet. *See also* Plaintiff's Exhibits 4 and 7.
[10] *See* Plaintiff's Exhibit 7.

which students could contest the results of their preliminary examination.

27.     In August, prior to Plaintiff enrolling in a new semester, Defendant Harrell urged plaintiff to pursue a second master's degree in epidemiology and she simultaneously sent him listings for current job openings in his field. This was clearly an attempt to dissuade Plaintiff from enrolling that semester. To not retake the preliminary exam at the next offering would have permanently removed him from the path for a PhD at UT Health.

28.     Plaintiff enrolled in the above-referenced Epidemiology III course taught by Professor Symanski, and encountered grading problems, as did all of his classmates at the Austin campus. Subsequently, six out of the seven students dropped the course, including Plaintiff.  Had he remained enrolled in it, he would have been failed and placed on academic probation in the PhD program, due to the aforementioned grading issues.[11]

29.     Defendant Harrell later admitted that Professor Symanski's Epidemiology III section had "a poor reputation in Austin." Austin Professor Kelder later told Plaintiff that students "always have to withdraw" from Professor Symanski's Epidemiology III course and retake it from him.

30.     Defendant Harrell gave Plaintiff the option of meeting with her in a one-on-one independent study course to prepare for the preliminary exam.  Plaintiff enrolled, they met weekly,[12] and on November 20, 2015, she informed him that he was so well-prepared, it was not necessary for them to finish out the semester. Defendant Harrell did not meet with him again for the independent study course and she gave him no further assignments.

---

[11] *See* Plaintiff's Exhibit 9, Letter from Defendant Harrell.
[12] *See* Plaintiff's Exhibit 9.

**[ 6 ]**

31.     Plaintiff sat for the preliminary examination for the second time on January 6, 2016.[13] Following administration of that examination, Plaintiff was informed that he had once again failed, and was provided with a "summary" of the results.[14]

32.     Defendant Harrell informed Plaintiff that the statewide pass rate was 80% on his first preliminary exam, which then dropped to 50% on his second exam.

33.     Despite Plaintiff's request, Defendant Mitchell provided even less information to Plaintiff than she had following the first examination, and she again refused to allow Defendant Harrell to review Plaintiff's failed exam.[15]

34.     After failing the preliminary exam for the second time, Plaintiff was dismissed from the PhD program.[16]

35.     Plaintiff subsequently commenced an Academic Conflict Resolution Appeal.[17] After his successful administrative appeal, Plaintiff was readmitted to the PhD program.[18]

36.     In December 2016, Plaintiff was informed of a new school policy that allowed students who failed their exams to review them, even though two administrators had previously informed him that such a policy already existed.

37.     Prior to January 2017, Defendant Dr. Rena S. Day replaced Defendant Mitchell as Chair of the Preliminary Exam Committee. In this position, Defendants Mitchell and Day had the ability to grade his preliminary exams un-blinded and to fail him, if the decision was made to target him for his views, by assigning Plaintiff a failing grade.

---

[13] *See* Plaintiff's Exhibit 10, Notice of January 2016 Preliminary Exam.
[14] *See* Plaintiff's Exhibit 11, Exam Summary Report from Defendant Mitchell.
[15] *See* Plaintiff's Exhibit 11. *Compare with* Plaintiff's Exhibit 4.
[16] *See* Plaintiff's Exhibit 12, First Notice of Dismissal.
[17] *See* Plaintiff's Exhibit 13, Academic Conflict Resolution Request/2nd Preliminary Exam.
[18] *See* Plaintiff's Exhibit 14, Resolution of Academic Conflict Request.

38.    Upon request, Defendant Day reviewed the questions from the first and second preliminary examinations with the Plaintiff, but she withheld the correct answers.

39.    While reviewing the examination with Defendant Day, Plaintiff noticed multiple answers marked wrong that he knew to be correct.

40.    Following Plaintiff's successful appeal, he was provided a third opportunity to take the preliminary examination.[19]

41.    A new remediation plan was designed by Defendant Harrell and Dr. Susan Tortolero Emery who had replaced Defendant Mitchell as overseer of research grants.[20]

42.    Defendants Mitchell and Harrell and Dr. Emery excluded coursework from Plaintiff's remediation plans which had benefitted other students preparing for Plaintiff's second and third preliminary exams. In an email, Defendant Mitchell denied that the department devised Plaintiff's remediation plans despite correspondence that proved otherwise.[21]

43.    Defendant Day wrote the preliminary exams, according to what she told her Epidemiology IV class. She also told students her final exam in that class was "exactly like the preliminary exam." Plaintiff was never advised to take Defendant Day's Epi IV class, which would obviously have been the most effective remediation plan he could have received.

44.    Prior to taking the preliminary examination, Plaintiff was instructed by Defendant Harrell to re-enroll in Epidemiology III with an associate professor in Houston.[22]

45.    Plaintiff requested and was allowed to re-take Epidemiology III from a full professor who was teaching the course in Austin, Professor Kelder, the Associate Regional Dean of the Austin

---

[19] *See* Plaintiff's Exhibit 14.
[20] *See* Plaintiff's Exhibit 15, UTHealth Remediation Plan. *See also* Plaintiff's Exhibit 14.
[21] *See* Plaintiff's Exhibit 16, Email Correspondence with Defendants Mitchell and Harrell.
[22] *See* Plaintiff's Exhibit 17, Text Message Correspondence with Defendant Harrell.

Regional Campus in the UT School of Public Health. Professor Kelder also met with Plaintiff one-on-one and replaced Defendant Harrell as his Academic Advisor. Dr. Kelder informed Plaintiff that he had been "loud and vocal" about the need to provide students with the exam and correct answers if they failed a preliminary exam, but that he had been voted down. It is this lack of transparency regarding grading that gives administration the power to fail students like Plaintiff at will.

46.     Plaintiff received an "A" in the course,[23] and Professor Kelder even offered him a paid summer research position. Professor Kelder was so confident in Plaintiff's grasp of the material, he told him, "You will definitely pass."

47.     Plaintiff took the preliminary examination for the third time on May 17, 2017.

48.     The outcome of Plaintiff's third preliminary examination was no different from before, however, as he was once again informed that he had failed, without any further information to explain or clarify that result.

49.     On June 27, 2017, UT Health dismissed Plaintiff from the Epidemiology program.[24]

50.     At the time of his dismissal from the program, Plaintiff had a 3.5 grade-point average.[25]

### III.

### CAUSES OF ACTION

### COUNT I

### Ultra Vires Acts – Defendants Harrell, Mitchell, and Day

51.     Plaintiff repeats and realleges Paragraphs 1 through 50 set forth above with the same force and effect as though set forth in full herein.

---

[23] *See* Plaintiff's Exhibit 2.
[24] *See* Plaintiff's Exhibit 18, Second Notice of Dismissal.
[25] *See* Plaintiff's Exhibit 2.

**[ 9 ]**

52.     The acts complained of were performed outside the scope of the legal authority of Defendants Harrell, Mitchell, and Day. The discriminatory treatment of Plaintiff and the ultimate denial of his rights guaranteed to him under state and federal law, up to and including his wrongful dismissal from UT Health Science Center, all constituted unlawful *ultra vires* actions on the part of the named defendants.

53.     Because "an action to determine or protect a private party's rights against a state officer who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars[,]" the government's plea to the jurisdiction will not dismantle a private party's suit alleging the actions of certain government officials were made without authority (ultra vires).[26]

54.     The actions of Defendants as they related to the Plaintiff were outside the authority conferred upon them by the State or the University of Texas. The grading irregularities and the refusal to follow their own procedures and guidelines concerning review of Preliminary Examinations, the feedback given to examinees, and remediation plan recommendations, were inconsistent, contradictory, and far from aboveboard.

55.     Defendants Mitchell, Harrell, and Day, acting together and individually, and in a manner outside the authority conferred upon them, all but guaranteed Plaintiff would fail the Preliminary Examination on each attempt, and therefore, be prevented from advancing through his doctoral program and ultimately obtaining his PhD degree in Epidemiology.

---

[26] *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997).

56.     The actions of Defendants and the discriminatory treatment of Plaintiff are contrary to Texas statutory law which unequivocally states the role and mission of higher education to be, *inter alia*, "to protect intellectual exploration and academic freedom."[27]

57.     Defendants Mitchell, Harrell, and Day chose to single out Plaintiff for reasons related to his viewpoint. Such conduct is in direct opposition to the overarching purpose of public universities in Texas, which is to "…achieve maximum effectiveness and to provide the greatest attainable educational benefit from the expenditure of public funds."[28]

58.     The actions of Defendants Mitchell, Harrell, and Day would further and aptly be categorized as ultra vires to the extent that they worked to impermissibly limit the number of degrees conferred by UTS component institution, UTHealth.[29]

59.     The University of Texas School of Public Health at Houston is part of the University of Texas at Houston, and under the direct control of the Board of Regents of the University of Texas System.[30]

60.     The actions of Defendants Mitchell, Harrell, and Day, as they relate to the Plaintiff, are also in direct violation of the UT System Board of Regents Rules (hereinafter referred to as "BOR Rules"). Texas court cases construing these Rules have held that the rules adopted by the Board "have the same force as statutes."[31]

---

[27] Tex. Educ. Code § 51.354.

[28] Tex. Educ. Code § 51.401; *See also* Tex. Educ. Code § 65.11 ("The government of the university system is vested in a board of nine regents appointed by the governor with the advice and consent of the senate. The board may provide for the administration, organization, and names of the institutions and entities in the University of Texas System in such a way as will achieve the maximum operating efficiency of such institutions and entities…").

[29] *See* Tex. Educ. Code § 65.31(b) ("The board is authorized to prescribe for each of the component institutions courses and programs leading such degrees as are customarily offered in outstanding American universities, and to award all such degrees….").

[30] *See* Tex. Educ. Code § 73.001(5).

[31] *See* Plaintiff's Exhibit 19, BOR Rule 10101-2.1.

61.    The actions of Defendants Mitchell, Harrell, and Day, work counter to the Board of Regents' stated goal of maintaining the trust and confidence of its students and the public, as well as exemplifying honesty and integrity in its dealings.[32]

62.    By engaging in viewpoint discrimination, the Defendants violated the rule governing their responsibilities as faculty members, which dictates that they are to "…foster intellectual curiosity and integrity in the student body."[33]

63.    The actions and conduct of Defendants Mitchell, Harrell, and Day work contrary to the fundamental precept that "freedom of speech and assembly are basic and essential to intellectual development."[34]

64.    Additionally, UTHealth has codified its policies and procedures in the Handbook of Operating Procedures ("HOOP").[35] These policies outline the rights and responsibilities of UTHealth, faculty, and the student body.

65.    Defendants Mitchell, Harrell, and Day violated UTHealth Operating Procedures when it failed to offer Plaintiff a fair and effective evaluation of his work and exams, as required.[36]

---

[32] *See* Plaintiff's Exhibit 20, BOR Rule 10901-3.1. ("The success of The University of Texas System is dependent on maintaining the trust and confidence earned from students, patients, faculty, staff, elected leaders, and members of the public. Trust and confidence are gained by adhering to commitments, displaying honesty and integrity, and reaching goals solely through diligence and honorable conduct").

[33] *See* Plaintiff's Exhibit 21, BOR Rule 31004-4.3.

[34] *See* Plaintiff's Exhibit 22, BOR Rule 40501-2.1.

[35] *See* UTHealth, *Handbook of Operating Procedures*, https://www.uth.edu/hoop/policies-by-number.htm (last visited June 11, 2019).

[36] *See* Plaintiff's Exhibit 23, HOOP Policy No. 100 ("The faculty . . . seeks to create a supportive setting through flexible academic programming, individual guidance, fair student evaluation, and attention to the quality of their own work, and to treat students as adult learners.").

66.      Defendants Mitchell, Harrell, and Day engaged in conduct towards Plaintiff during the course of his studies at UTHealth, that fell significantly short of that required by policies pertaining to standards of conduct for faculty members.[37]

67.      Defendants Mitchell, Harrell, and Day in their interaction with Plaintiff, violated the spirit if not the letter, of the policies concerning evaluation and review of the students' work and academic progress at UTHealth.[38]

68.      The viewpoint discrimination suffered by Plaintiff as a result of the Defendants' actions are in direct violation of UTHealth's policies concerning the right to free speech and assembly of its students.[39] Plaintiff was singled out for disparate treatment as a result of his views been seen as not "mainstream."

69.      The discrimination suffered by Plaintiff, and the accompanying disparate treatment, by the Defendants' violates UTHealth's policy prohibiting "…discrimination and/or harassment by any member of the university community on the basis of . . . disability, genetic information, . . . or any other basis prohibited by law."[40]

70.      The conduct of Defendants Mitchell, Harrell, and Day in connection with Plaintiff's testing and evaluation, and ultimate dismissal from the program, fails to satisfy the requirements as promulgated by UTHealth's policy governing student complaints or grievances, that

---

[37] *See* Plaintiff's Exhibit 24, HOOP Policy No. 109 ("[UTHealth] "expects all employees and trainees to follow the highest standards of personal conduct as established by university policy and federal, state and local laws").

[38] *See* Plaintiff's Exhibit 25, HOOP Policy No. 135 ("Faculty members having the following responsibilities: . . . making themselves available to students and other trainees to discuss questions, concerns, or the progress of the student").

[39] *See* Plaintiff's Exhibit 26, HOOP Policy No. 174 ("[T]he university shall not discriminate on the basis of political, religious, philosophical, ideological or academic viewpoint expressed by any person, either in the enforcement and administration of these rules or otherwise").

[40] *See* Plaintiff's Exhibit 25, HOOP Policy No. 135.

**[ 13 ]**

"encourages fair, efficient and equitable solutions for problems or disputes arising out of the educational process in accordance with applicable university or school policies and procedures."[41]

## COUNT II

### 42 USC §1983 - First Amendment Freedom of Speech - Retaliation

71.    Plaintiff repeats and realleges Paragraphs 1 through 70 set forth above with the same force and effect as though set forth in full herein.

72.    Plaintiff has a right to be free from retaliation for exercising rights protected by the First Amendment to the U.S. Constitution, including his right to speak freely on matters of private interest and public concern.

73.    Plaintiff's efforts to speak and write freely about matters related to his field and of professional and personal interest amount to an exercise of rights protected by the U.S. Constitution, including Plaintiff's right to free speech.

74.    Defendants have retaliated against Plaintiff for exercising his First Amendment rights by engaging in discriminatory treatment and by improperly dismissing him from The University of Texas Health Science Center.

75.    Defendants Harrell, Mitchell, and Day, and other agents, representatives, and employees of The University of Texas acting under color of State law and in concert with one another, by their conduct, showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights.

---

[41] *See* Plaintiff's Exhibit 27, HOOP Policy No. 220.

[ 14 ]

76.    On information and belief, Defendants Harrell, Mitchell, and Day, and other agents, representatives, and employees of The University of Texas acting under color of state law and in concert with one another, acted out of vindictiveness and ill will towards Plaintiff.

77.    Defendants Harrell, Mitchell, and Day, and other agents, representatives, and employees of The University of Texas acting under color of state law and in concert with one another, acted out of an intent to punish Plaintiff for and to deter him from exercising his First Amendment – Free Speech rights.

78.    The acts of Defendants Harrell, Mitchell, and Day and other agents, representatives, and employees of The University of Texas as described above were committed while Defendants operated within their official capacity, and as such, are attributable to The University of Texas.

79.    At all times material hereto, Plaintiff had a clearly established right to freedom of speech of which a reasonable public official would have known.

80.    As a direct and proximate result, Plaintiff has suffered irreparable harm, injury, and damages, including but not limited to, monetary damages, loss of his graduate school PhD education and specifically, his PhD degree in Epidemiology, Plaintiff's ability to gain admission to another PhD program, time and resources, career and educational opportunities and earning capacity, mental and emotional distress, anxiety and mental anguish, humiliation and embarrassment,  and loss of personal and professional reputation.

**COUNT III**

**42 USC § 1983 - Fourteenth Amendment Due Process**

81.    Plaintiff repeats and realleges Paragraphs 1 through 80 set forth above with the same force and effect as though set forth in full herein.

82.    As a student at a public university, Plaintiff enjoyed a constitutionally protected

**[ 15 ]**

fundamental right and interest in continuing his graduate school education, following his admission thereto.

83.     As a student at a public university, Plaintiff enjoyed a constitutionally protected property interest in continuing his graduate school education.

84.     Plaintiff's reputation and his opportunity to pursue future employment constitute a constitutionally protected liberty interest.

85.     Defendants' dismissal of Plaintiff from The University of Texas Health Science Center was arbitrary and capricious and motivated by bad faith and viewpoint-based discrimination.

86.     Plaintiff was not afforded an unbiased, careful, and deliberate review process either prior to or following his dismissal from The University of Texas Health Science Center.

87.     Defendants made false charges and accusations against Plaintiff which stigmatized him and severely damaged his ability to gain admission to another PhD program as well as his opportunities for future employment.

88.     Plaintiff was denied a meaningful opportunity to clear his name.

89.     In depriving Plaintiff of his constitutionally protected rights, including his fundamental right to and property interest in continuing his public university education as a PhD candidate, and his liberty interest in his reputation and opportunity to pursue future employment and educational opportunities, Defendants' actions violated his right to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

90.     Defendants Harrell, Mitchell, and Day, and other agents, representatives, and employees of The University of Texas acting under color of state law and in concert with one another, by their conduct, showed intentional, outrageous, and reckless disregard for Plaintiff's constitutionally protected right to free speech, as guaranteed by the First Amendment.

91.     Defendants Harrell, Mitchell, and Day, and other agents, representatives, and employees of The University of Texas acting under color of state law and in concert with one another, acted out of vindictiveness and ill will towards Plaintiff.

92.     The acts of Defendants Harrell, Mitchell, and Day, and other agents, representatives, and employees of The University of Texas Health Science Center as described above were committed while Defendants operated within their official capacity, and as such, are attributable to The University of Texas.

93.     At all times material hereto, Plaintiff had a clearly established right to due process of law of which a reasonable public official would have known.

94.     As a direct and proximate result, Plaintiff has suffered irreparable harm, injury, and damages, including but not limited to, monetary damages, loss of his PhD degree in Epidemiology, time and resources, loss of career and educational opportunities and earning capacity, mental and emotional distress, anxiety and mental anguish, humiliation and embarrassment,  and loss of personal and professional reputation.

## COUNT IV

### Texas Constitution, Art. I, Sec. 19 - Due Course of Law

95.     Plaintiff repeats and realleges Paragraphs 1 through 94 set forth above with the same force and effect as though set forth in full herein.

96.     As a student at public university, Plaintiff enjoyed a constitutionally protected fundamental right and interest, under the Texas Constitution, in continuing his graduate school education, following his admission thereto.

97.     As a student at a public university, Plaintiff enjoyed a constitutionally protected

property interest, under the Texas Constitution, in continuing his graduate school PhD education, following his admission thereto.

98.    Plaintiff's reputation and his opportunity to pursue future employment constitute a constitutionally protected liberty interest under the Texas Constitution.

99.    Defendants' dismissal of Plaintiff from The University of Texas Health Science Center was arbitrary and capricious and motivated by bad faith and viewpoint discrimination.

100.    Plaintiff was not afforded an unbiased, careful, and deliberate review process either prior to or following his dismissal from The University of Texas Health Science Center.

101.    Defendants made false charges and accusations against Plaintiff which stigmatized him and severely damaged his opportunities for future employment.

102.    Plaintiff was denied a meaningful opportunity to clear his name via due process.

103.    In depriving Plaintiff of his constitutionally protected rights, including his fundamental right to and property interest in continuing his public university education, and his liberty interest in his reputation and opportunity to pursue future employment, Defendants' conduct contravened Plaintiff's right to due process of law in violation of the Texas Constitution.

104.    Defendants Harrell, Mitchell, and Day, and other agents, representatives, and employees of The University of Texas Health Science Center acting under color of state law and in concert with one another, by their conduct, showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights.

105.    Defendants Harrell, Mitchell, and Day, and other agents, representatives, and employees of The University of Texas Health Science Center acting under color of state law and in concert with one another, acted out of vindictiveness and ill will towards Plaintiff.

[ 18 ]

106.    The acts of Harrell, Mitchell, and Day, and other agents, representatives, and employees of The University of Texas Health Science Center as described above were committed while Defendants operated within their official capacity, and as such, are attributable to The University of Texas Health Science Center.

107.    At all times material hereto, Plaintiff had a clearly established right to due process of law under the Texas Constitution of which a reasonable public official would have known.

108.    As a direct and proximate result, Plaintiff has suffered irreparable harm, injury, and damages, including but not limited to, monetary damages, loss of his PhD degree in Epidemiology, time and resources, loss of career and educational opportunities and earning capacity, mental and emotional distress, anxiety and mental anguish, humiliation and embarrassment,  and loss of personal and professional reputation.

## COUNT V

### Breach of Contract or Implied Contract

109.    Plaintiff repeats and realleges Paragraphs 1 through 108 set forth above with the same force and effect as though set forth in full herein.

110.    Plaintiff had a contract or implied contract with The University of Texas.

111.    Defendants' failure and refusal to abide by the terms of that contract or implied contract constituted a breach of said contract.

112.    As a direct and proximate result, Plaintiff has suffered irreparable harm, injury, and damages, including but not limited to, monetary damages, loss of his PhD degree in Epidemiology, time and resources, loss of career and educational opportunities and learning capacity, mental and emotional distress, anxiety and mental anguish, humiliation and embarrassment; and loss of personal and professional reputation.

## IV.

## RELIEF REQUESTED

Plaintiff demands judgment against Defendants Regents of the University of Texas and

Defendants Harrell, Mitchell, and Day, in their individual and official capacities

as follows:

### Equitable Relief

Plaintiff seeks equitable relief from the Court as follows:

1. An order reinstating Plaintiff to The University of Texas Health Science Center; and otherwise placing him in the position he would have been in but for Defendants' wrongdoing;

2. A permanent injunction out of this Court prohibiting any further acts of wrongdoing;

3. Whatever other equitable relief appears appropriate at the time of final judgment.

## DEMAND FOR TRIAL BY JURY

Plaintiff by his attorney, David K. Sergi, demands a trial by jury on all of the issues in

this cause.

[ 20 ]

## V.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants, and their relief requested herein granted, as well as such other and further relief to which Plaintiff may be entitled in law or equity.

Respectfully submitted,

**SERGI & ASSOCIATES, PC**

/s/ *David K. Sergi*
David K. Sergi
State Bar No. 18036000
329 S. Guadalupe St.
San Marcos, TX  78666
Tel: 512.392.5010
Fax: 512.392.5042
Email: david@sergilaw.com

**[ 21 ]**

## CERTIFICATE OF SERVICE

On June 11, 2019,  the foregoing document was filed with the Clerk of the Court via the

ECF system and a copy of said document was also served on the following parties and/or their

designated representatives via the manner indicated:

VIA ELECTRONIC FILING
**Benjamin L. Dower**
Office of the Attorney General
300 W 15th St.
Austin, TX 78701
512-463-2120
Fax: 512-320-0667
Email: benjamin.dower@oag.texas.gov


/s/ *David K. Sergi*
David K. Sergi

**[ 22 ]**