# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
January 7, 2021
Lyle W. Cayce
Clerk

No. 19-51013

JOHN DOE,

  *Plaintiff—Appellant*,

versus

MELISSA HARRELL, *individually and in her official capacity*; LAURA E. MITCHELL, *individually and in her official capacity*; RENA S. DAY, *individually and in her official capacity*; BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM,

  *Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:19-CV-415

Before HAYNES, HIGGINSON, and OLDHAM, *Circuit Judges*.
PER CURIAM:[*]

John Doe is a former epidemiology graduate student who pursued a PhD at the University of Texas Health Science Center ("UTHealth") for three-and-a-half years. He was dismissed from the PhD program after failing

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

a required examination three times. He alleged that his UTHealth professors—Melissa B. Harrell, Laura E. Mitchell, Rena S. Day (collectively, the "Professors")—and the Board of Regents of the University of Texas System (the "Board," and with the Professors, "Defendants") actually dismissed him from the program because he has views critical of current vaccine research. The district court dismissed his claims, some for lack of subject-matter jurisdiction and the remainder for failure to state a claim. We AFFIRM.[1]

## I. Background

Because Doe appeals the dismissal of his complaint, we take all well-pleaded factual allegations in his complaint as true; this section, therefore, reflects the facts as alleged therein. *See Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc).

Doe has concerns about current vaccine research: he has "regularly and consistently espoused views that are critical of vaccine safety and efficacy" and has "brought attention to scientific studies and government documents that link vaccines to autism." He has posted about these topics on social media, which he claims has prompted others to start "letter-writing campaigns" against him.

Doe applied and was admitted to UTHealth's epidemiology PhD program in 2013. After enrolling in the program, Doe spent his first two years completing coursework in preparation to take a required "preliminary examination"—which he needed to pass to begin writing a dissertation and ultimately obtain his PhD.

---

[1] Judge Oldham concurs in the judgment only.

No. 19-51013

Doe took that exam for the first time in June 2015. He failed it. Mitchell, then-head of the Preliminary Exam Committee, provided Doe with an "Exam Summary"—but not Doe's graded exam itself—indicating that Doe's exam answers demonstrated "broad deficits" in knowledge with respect to all areas of epidemiology. Mitchell created a remediation plan to help Doe prepare to take the preliminary examination a second time. Doe ultimately modified that plan, opting to meet one-on-one with Harrell, his academic advisor.

Doe took—and failed—the exam a second time in January 2016, causing him to be dismissed from the PhD program. Like the first time he took the exam, he was provided a summary of his results but not his graded exam itself. Doe filed an academic appeal, asking UTHealth to reconsider his dismissal. UTHealth gave him another chance: he was readmitted to the program, but only on the condition that he pass the preliminary exam on his third attempt. Doe was also given additional assistance in preparing for the third exam, including reviewing his prior preliminary exams with Day. He nonetheless failed it a third time, resulting in a final dismissal from the PhD program.

Following his dismissal, Doe filed an unsuccessful lawsuit in state court, seeking pre-suit discovery from the Professors under Texas Rule of Civil Procedure 202. Doe then filed this case in federal district court. In Doe's operative Second Amended Complaint, Doe alleged five claims against the Board and the Professors in both their individual and official capacities, asserting that:

(1) the Professors engaged in "ultra vires" conduct beyond the authority conferred on them by the State or the University of Texas (Count I);
(2) all Defendants engaged in viewpoint discrimination and retaliation in violation of the First Amendment by dismissing him

3

for his views on vaccines (Count II);
(3) all Defendants dismissed him in violation of the Due Process Clause of the Fourteenth Amendment (Count III);
(4) all Defendants dismissed him in violation of the due-course-of-law protections of Article I, Section 19 of the Texas Constitution (Count IV); and
(5) all Defendants breached their contract with Doe by violating the terms of his academic program (Count V).

With respect to all claims, Doe sought only prospective relief: reinstatement to the PhD program.[2]

In connection with the litigation, Doe sent Defendants a number of document requests, which he characterized as "jurisdictional discovery" but which essentially sought to find out what the Professors knew about his vaccine viewpoint. The district court granted the Defendants a protective order denying Doe the requested discovery.

Defendants moved to dismiss Doe's complaint for lack of subject-matter jurisdiction and for failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. The district court granted the motion in full. Doe timely appealed.

## II. Jurisdiction & Standard of Review

The district court concluded that it lacked jurisdiction to consider many of Doe's claims. We have jurisdiction to decide jurisdiction; the

---

[2] Specifically, his prayer for relief sought only "equitable relief" as follows:
> 1. An order reinstating Plaintiff to The University of Texas Health Science Center; and otherwise placing him in the position he would have been in but for Defendants' wrongdoing;
> 2. A permanent injunction out of this Court prohibiting any further acts of wrongdoing;
> 3. Whatever other equitable relief appears appropriate at the time of final judgment.

burden of proving jurisdiction falls on the plaintiff. *See In re Transtexas Gas Corp.*, 303 F.3d 571, 576–77 (5th Cir. 2002); *see also St. Tammany Par. ex rel. Davis v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009) (placing the burden of proof to prove lack of sovereign immunity on the plaintiff). Federal question claims fall under 28 U.S.C. § 1331 and appellate jurisdiction under 28 U.S.C. § 1291. Our jurisdictional review and our merits review are both de novo. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).[3] To survive a 12(b)(6) motion, the plaintiff must allege sufficient facts to "state a claim to relief that is plausible on its face" such that a court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (first quotation); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (second quotation). The allegations must be more than "speculative"; "mere conclusory statements . . . do not suffice." *Iqbal*, 556 U.S. at 678.

Doe also challenges the district court's decision to deny him pre-motion-to-dismiss discovery. We review such discovery rulings for abuse of discretion. *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009).

### III. Discussion

#### A. State Sovereign Immunity

State sovereign immunity typically prevents federal courts from exercising subject-matter jurisdiction over suits against a state, its agencies,

---

[3] There is a difference between the evaluation of 12(b)(1) and 12(b)(6) motions with respect to factual claims: a district court can resolve factual disputes in evaluating its jurisdiction but must accept the pleaded facts as true in determining whether the complaint states a claim. *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014). Here, however, the district court did not assess disputed facts in either of its analyses—the issue with Doe's complaint, as the district court correctly identified, was the *absence* of certain factual allegations.

or its officials unless either the state has waived its immunity or Congress has abrogated it. *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 769 (5th Cir. 2015). Doe does not dispute that the Board and the Professors can assert state sovereign immunity.[4] Nor does he contend that the state has waived its immunity with respect to any of his claims or that Congress has abrogated Defendants' immunity. Doe instead seeks to invoke the exception to state sovereign immunity for certain cases seeking prospective relief laid out in *Ex parte Young*, 209 U.S. 123 (1908).[5] His arguments, however, fail.

The Board itself is immune from *all* of Doe's claims: absent waiver or abrogation (neither of which are at issue here), only state officials—not state agencies—can be prospectively enjoined consistent with state sovereign immunity.[6] *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S.

---

[4] As relevant here, neither party disputes that the Board is a state agency entitled to assert state sovereign immunity as an "arm of the state." *Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280–81 (1977); *see also Texas ex rel. Bd. of Regents of Univ. of Tex. Sys. v. Walker*, 142 F.3d 813, 820 n.10 (5th Cir. 1998) (suggesting that the Board can assert state sovereign immunity). Likewise, neither party disputes that the Professors can assert state sovereign immunity as state officials. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). We agree.

[5] Doe also asserts that the Professors acted beyond their authority such that they are not entitled to immunity and can be sued in their individual capacities. But even if that mechanism were available in other situations, Doe cannot evade state sovereign immunity or pursue individual capacity claims here because the relief Doe seeks—reinstatement—can only be provided by the Professors in their official capacities. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106–09 (1984) (rejecting an ultra vires argument because the relief sought—closing a hospital and creating new, smaller hospitals—"was institutional and official in character").

[6] Doe tries to avoid state agency immunity by asserting that his claims against the Board should be treated as claims against the Board's *individual members* under Rule 17(d). But that rule simply allows a "public officer" to be designated by title instead of name; it does not, as Doe urges, permit a court to treat a suit against an entity as a suit against the individuals that comprise it. FED. R. CIV. P. 17(d). Doe did not sue any individual Board members using either their official titles or their names; he merely sued the Board itself. Rule 17(d) is therefore inapplicable.

139, 146 (1993) (noting that *Ex parte Young* "has no application in suits against the States and their agencies, which are barred regardless of the relief sought"); *accord Cozzo v. Tangipahoa Par. Council–President Gov't*, 279 F.3d 273, 280 (5th Cir. 2002). We therefore conclude that all of Doe's claims against the Board were properly dismissed.[7]

The Professors are also immune with respect to Doe's state law claims. *Ex parte Young* allows only *federal* claims against state officials for prospective relief; it cannot be used to "instruct[] state officials on how to conform their conduct to state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 275 (5th Cir.), *cert. denied*, 2020 WL 6385842 (Nov. 2, 2020) ("[S]tate officials cannot be sued for violations of state law in federal court, even under the *Ex Parte Young* exception."). Doe's state law claims (Counts I, IV, and V) against the Professors were therefore also properly dismissed.

We now turn to Doe's federal viewpoint discrimination and due process claims against the Professors (Counts II and III).

### B. Viewpoint Discrimination

To sustain his claim that the Professors discriminated and retaliated against him for his views on vaccine safety, Doe needed to plausibly allege that: (1) he engaged in constitutionally-protected speech;[8] and (2) his speech was a substantial or motivating factor in the Professors' decision to remove him from the PhD program. *See Kelleher v. Flawn*, 761 F.2d 1079, 1083 (5th

---

[7] Although the district court based its dismissal of Doe's claims against the Board on lack of standing, we may affirm a jurisdictional dismissal on any ground supported by the record. *Texas v. Travis Cnty.*, 910 F.3d 809, 811 (5th Cir. 2018).

[8] Defendants do not dispute that Doe adequately alleged that he had engaged in constitutionally protected speech.

Cir. 1985). To avoid dismissal as to the second prong, Doe had to plausibly allege facts indicating that the Professors knew about his views on vaccines. *See Dearman v. Stone Cnty. Sch. Dist.*, 832 F.3d 577, 581 (5th Cir. 2016) (citing *Tharling v. City of Port Lavaca*, 329 F.3d 422, 428 (5th Cir. 2003) ("It is axiomatic that a party cannot be 'substantially motivated' by a circumstance of which that party is unaware.")).

Doe failed to allege that the Professors were aware of his views. There are some allegations suggesting Doe stated his views generally: Doe alleged that he discussed his views on vaccine safety on social media and in his application to UTHealth. Those statements, Doe alleged, prompted "letter-writing campaigns" from others who disagreed with him.[9] But there are no allegations about the Professors' particular knowledge: Doe did not allege any facts suggesting that the Professors were aware of his social media activity, the contents of his application, or any letters written by his opponents.

On appeal, Doe also cites an affidavit he submitted in response to Defendants' motion to dismiss, in which he stated that Harrell knew his views on vaccines because he had expressed them in his classes and in an extracurricular group. But no allegations to that effect appear anywhere in his complaint. In any event, even if Doe had included allegations of Harrell's knowledge of his views in his complaint, Doe did not allege (in his complaint or in his affidavit) that Harrell had any role in the decision to dismiss him from UTHealth or that Harrell communicated her knowledge of Doe's views

---

[9] On appeal, Doe cites similar allegations in his *state court* pre-suit discovery petition indicating that he was the subject of some media attention. Even if we were to consider those allegations, Doe's state court petition—like his operative complaint—fails to suggest that the Professors were aware of the media attention he received.

to anyone who did. Thus, the allegations underlying the affidavit would be insufficient to establish a causal link between Doe's speech and his dismissal.

Because Doe failed to allege any facts plausibly suggesting that the Professors knew of his views on vaccine safety, he failed to adequately plead that his views were a substantial or motivating factor in his removal from the PhD program. The district court therefore properly dismissed Doe's viewpoint discrimination claim.

### C. Due Process

Doe also challenges the dismissal of his due process claim. Although Doe does not clearly articulate whether his due process claim is procedural or substantive, the district court addressed the claim through both lenses. We will do so as well.

#### 1. Procedural Due Process

Students dismissed from public universities for *disciplinary* reasons generally have constitutionally protected interests that warrant due process protections. *See Goss v. Lopez*, 419 U.S. 565, 574 (1975). The Supreme Court has indicated that academic dismissals can also warrant some, if fewer, procedural safeguards. *See Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 222 (1985); *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978). Doe concedes that his dismissal was academic. *See generally Wheeler v. Miller*, 168 F.3d 241, 250 (5th Cir. 1999) (per curiam) (noting that "poor grades" and unsuccessful "remediation" are paradigmatic academic dismissals).

A public university is not required to afford significant process before dismissing a student on academic grounds; the university need only provide notice explaining the reasons for the "faculty's dissatisfaction." *Horowitz*, 435 U.S. at 85; *see also Shaboon v. Duncan*, 252 F.3d 722, 731 (5th Cir. 2001). Doe's allegations plainly indicate that he received more than enough notice

of his substandard academic performance to meet that requirement: Doe was given three chances to take the required exam and exam summaries detailing his performance. He was provided multiple remedial learning programs and was allowed to retake courses. He was provided one-on-one instructional assistance. Finally, before he took the third exam, he met with Day—who Doe indicates wrote the exam—to review and discuss questions from his previous two sittings. Certainly, Doe wanted even more information, but the information he did receive was more than enough to inform him of the Professors' "dissatisfaction" with his academic performance. *Horowitz*, 435 U.S. at 85. Accordingly, the district court correctly dismissed Doe's procedural due process claim.

### 2. Substantive Due Process

An academic dismissal only amounts to a substantive due process violation if it is "clearly arbitrary or capricious." *Id.* at 91 (quotation marks omitted). A plaintiff must therefore plausibly allege that the defendants' conduct is beyond the pale of reasonable academic decision-making: the conduct must be "such a substantial departure from accepted academic norms as to demonstrate that the [officials] responsible did not actually exercise professional judgment." *Ewing*, 474 U.S. at 225; *accord Patel v. Tex. Tech Univ.*, 941 F.3d 743, 748 (5th Cir. 2019).

Doe's substantive due process claim fails for the same reasons as his viewpoint discrimination claim. The Professors' failures of academic judgment, Doe claims, are founded on their "bad faith motive" in "discriminat[ing] against him based on his well-known viewpoints critical of vaccine safety and efficacy." But, as discussed, Doe failed to plausibly allege that the Professors were even aware of those views. So, there is nothing to suggest that they departed—let alone substantially departed—from any

academic norms of nondiscrimination.[10]   *Ewing*, 474 U.S. at 225. Accordingly, the district court correctly dismissed Doe's substantive due process claim.

D.     **Pre-Motion-To-Dismiss Discovery**

Doe also claims that the district court erred in denying him discovery prior to dismissing his claims for lack of subject-matter jurisdiction and failure to state a claim. In particular, he suggests that "jurisdictional discovery" would have "answered" issues with his First Amendment viewpoint discrimination claim. That information, he argues, would have helped him negate Defendants' immunity defenses and therefore demonstrate the court's jurisdiction.

The problem for Doe is that jurisdiction already existed over his viewpoint discrimination and due process claims against the Professors: As state officials, they cannot invoke state sovereign immunity against federal claims seeking prospective relief. That is at the core of the *Ex parte Young* doctrine. *See, e.g.*, *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ("[Under] *Ex parte Young* . . . , a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." (internal quotation marks and citation omitted)). Nor would fact discovery change the immunity calculus with respect to Doe's other

---

[10] To the extent Doe's arguments concern more than just the Professors' alleged viewpoint discrimination, Doe nonetheless failed to allege more than minor departures from academic norms: he alleged that Mitchell provided him allegedly unhelpful and "harshly written" exam summaries; that Mitchell incorrectly told him after his first exam that there was no appeal mechanism for exam results; and that Mitchell and Harrell created allegedly ineffective remediation plans. Doe points to no reason why those alleged incidents would fall outside the bounds of reasonable professional judgment. *See Ewing*, 474 U.S. at 514.

claims; as discussed above, Doe cannot maintain those causes of action at all here given the prospective and uniquely institutional nature of the relief he seeks. *See Pennhurst*, 465 U.S. at 106–09; *cf. Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 537 n.17 (5th Cir. 1992) (noting that jurisdictional discovery is generally only available in the immunity context if the applicability of an immunity turns on a fact question).

That means that the only conceivable use for Doe's requested discovery would be to shore up the *merits* of his viewpoint discrimination claim. But a plaintiff must adequately plead a claim before getting merits discovery. *See Twombly*, 550 U.S. at 559 ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process."); *Iqbal*, 556 U.S. at 686 ("Because [the plaintiff]'s complaint is deficient . . . , he is not entitled to discovery, cabined or otherwise."); *see, e.g.*, *Jones v. Nueces Cnty.*, 589 F. App'x 682, 686 (5th Cir. 2014) (per curiam) ("To the extent that [the plaintiff]'s requested discovery regarded his constitutional claims, he was not entitled to it because the district court held that the claims were inadequately pleaded."). As we have discussed, Doe failed to satisfy his pleading obligations. Accordingly, the district court appropriately denied Doe the requested discovery.

AFFIRMED.



# United States Court of Appeals
# for the Fifth Circuit

**Certified as a true copy and issued as the mandate on Feb 05, 2021**

**Attest:** *Lyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

No. 19-51013

United States Court of Appeals
Fifth Circuit
**FILED**
January 7, 2021
Lyle W. Cayce
Clerk

John Doe,

*Plaintiff—Appellant*,

*versus*

Melissa Harrell, Individually and in her official capacity; Laura E. Mitchell, Individually and in her official capacity; Rena S. Day, Individually and in her official capacity; Board of Regents of the University of Texas System,

*Defendants—Appellees*.

―――――――――――――――――

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:19-CV-415

―――――――――――――――――

Before Haynes, Higginson, and Oldham, *Circuit Judges*.

J U D G M E N T

This cause was considered on the record on appeal and the briefs on file.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED.[1]

IT IS FURTHER ORDERED that Appellant pay to Appellees the costs on appeal to be taxed by the Clerk of this Court.

---

[1] Judge Oldham concurs in the judgment only.

# United States Court of Appeals
**FIFTH CIRCUIT**
OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
Suite 115
**NEW ORLEANS, LA 70130**

February 05, 2021

Ms. Jeannette Clack
Western District of Texas, Austin
United States District Court
501 W. 5th Street
Austin, TX 78701-0000

    No. 19-51013   Doe v. Harrell
                        USDC No. 1:19-CV-415

Dear Ms. Clack,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

                              Sincerely,

                              LYLE W. CAYCE, Clerk

                              By: _____
                              Melissa V. Mattingly, Deputy Clerk
                              504-310-7719

cc w/encl:
    Mr. Benjamin Lindberg Dower
    Mr. Evan Scott Greene
    Ms. Anita Kawaja
    Mr. David Kenneth Sergi
    Mr. Esteban San Miguel Soto